United States Court of Appeals,

Fifth Circuit.

Nos. 94-10737, 94-10841.

Billy Wayne HORTON, Plaintiff-Appellant,

v.

Janie COCKRELL, et al., Defendants-Appellees.

Dec. 12, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and WISDOM and STEWART, Circuit Judges.

PER CURIAM:

The plaintiff/appellant, Billy Wayne Horton, is an inmate in the Clements Unit of the Texas Department of Criminal Justice (TDCJ). Horton appeals the district court's decision to dismiss his *in forma pauperis* civil rights suit against prison officials as frivolous under 28 U.S.C. § 1915(d)[1]. We find that Horton's complaint was not frivolous. Therefore, we VACATE the order of dismissal, and REMAND for further proceedings.

## I. Background

In July, 1992, Billy Wayne Horton filed an *in forma pauperis* suit in the Eastern District of Texas under 42 U.S.C. § 1983. While the case was pending, Horton was transferred to the Clements Unit of the Texas Department of Criminal Justice (TDCJ), located in the Northern District of Texas. Shortly after arriving at

---

[1]28 U.S.C. § 1915(d) provides in relevant part, "the court may ... dismiss the [*in forma pauperis* ] case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

1

Clements, Horton was involved in two altercations with another inmate. As a result of these altercations, Horton filed a supplemental complaint in his civil rights suit, contending that TDCJ officials failed to protect him from a violent inmate. Specifically, he alleged the following facts:

On Horton's first day at Clements, an inmate named Ronald Jackson allegedly approached Horton and threatened to assault him unless he paid "extortion money." The next morning, Horton reported the threat to the desk officer, defendant John Doe. The officer said he could not do anything about the situation, and suggested that Horton write to his correctional counselor.

Later that day, Jackson allegedly approached Horton and made "threatening gestures." Horton asserts that he had no alternative, and punched Jackson in self defense, starting a fight. Both men were charged with fighting and placed in pre-hearing detention. The following day, Horton filed a formal grievance informing the warden that Jackson was "assaultive," and had tried to extort money from him. The warden refused any relief and referred Horton to his correctional counselor. Horton stated that he had already notified his correctional counselor, and that he wanted to alert the warden to take action to protect him. Horton's correctional counselor had told Horton that one inmate could not request the relocation of another inmate. The warden denied Horton's appeal. Horton and Jackson were returned to the same prison section after they were released from detention. Horton filed another grievance alleging that Jackson was continuing to threaten him and other white

2

inmates, and was attempting to start a "race riot."

Shortly thereafter, Jackson allegedly assaulted another white inmate, and threatened to assault a group of white inmates, but was prevented from doing so by the arrival of a prison guard. In response, Horton filed another formal grievance.

Several days later, Jackson allegedly approached Horton while Horton was drinking from a water fountain, and punched him in the eye. Horton and Jackson were again both charged with fighting. The hearing officer refused to hear evidence that Horton was acting in self defense. There were no further incidents.

After Horton filed his supplemental complaint, the magistrate judge assigned to the original suit severed the claims arising from Horton's residence at the Clements Unit, and transferred them to the Northern District of Texas. The new magistrate judge twice ordered Horton to supplement his pleadings with additional information about his suit. Horton did so, although he was tardy with both responses.

After considering the supplemented pleadings, the new magistrate judge recommended that the district court dismiss the plaintiff's claim as frivolous under 28 U.S.C. § 1915(d). Horton filed a formal objection to this recommendation, including as exhibits copies of formal grievances and his correspondence with his correctional counselor. The magistrate judge ordered Horton to provide additional copies of his objections and the attached exhibits in accordance with the local rule. Horton filed a typed "duplicate" of his objections, but could not do the same for his

3

exhibits. Horton wrote a letter to the clerk of court explaining that he did not have access to a copy machine at the prison, but that he would pay the copying costs if the clerk's office would make an additional copy of the exhibits for him. The clerk did not do so, and the magistrate judge ordered the exhibits removed from the record. The district judge later adopted the magistrate judge's recommendation and dismissed Horton's case.

Before the district court acted on the magistrate judge's recommendation, Horton filed a motion for leave to file an amended complaint. The new complaint made minor changes in the alleged facts and named another defendant in the suit. The magistrate judge recommended that the district court deny Horton leave to file the amended complaint. The district court also adopted this recommendation.

Horton has filed two appeals in this court. The first argues that the district court abused its discretion in dismissing the case as frivolous, and that the magistrate judge abused his discretion in removing from the record Horton's exhibits relating to his objections to the magistrate judge's recommendation. The second appeal challenges the district court's decision to refuse to allow the plaintiff leave to file his amended complaint.[2] We

---

[2]Horton also alleges on appeal that TDCJ officials denied him due process at his disciplinary hearings for fighting by refusing to allow him to present evidence that he was fighting in self defense. Horton did not raise this matter in the district court. In fact, Horton specifically repudiated this claim. Horton alleged in his complaint that he was not allowed to present evidence of self defense at his disciplinary hearing, but then stated, "[p]lease don't construe this as an attack to overturn the disciplinary conviction, this is not the case.[sic]

4

address each of these arguments in turn.[3]

## II.

Horton first appeals the district court's decision to dismiss his suit as frivolous. A district court may dismiss an *in forma pauperis* proceeding if the claim has no arguable basis in law and fact.[4] We review that decision for abuse of discretion.[5]

A claim is factually frivolous only if the "facts alleged give rise to the level of the irrational or the wholly incredible."[6] Merely unlikely allegations will not satisfy this

---

But, rather to show deliberate indifference to plaintiff's predicament, and reckless disregard for plaintiff's personal safety." Because Horton did not raise this issue in the lower court, this court will not address it on appeal.

[3]We note that Attorney General for the State of Texas filed an informal letter brief on behalf of the named defendants/appellees in this case. This letter maintains that this court does not have jurisdiction over these appeals because of Horton's failure to serve any of the named defendants within 120 days of filing the complaint in this suit. The defendants have not raised this issue in the district court, however, and have not even formally raised the issue in this court, as the letter brief specifically states that it in no way serves as an answer or appearance for the defendants in any purpose. While this court may address issues of appellate jurisdiction and subject matter jurisdiction on its own motion, it will not do so with issues of personal jurisdiction which may be waived. F.R.C.P. 12(h). This is especially true in the case of a plaintiff's failure to serve process, because the district court has the power to excuse the deficiency if it finds "good cause" for the plaintiff's failure. F.R.C.P. 4(m). Therefore, this court has jurisdiction to hear Horton's appeals.

[4]28 U.S.C. § 1915(d); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465, 468 (5th Cir.1992).

[5]*Id.*

[6]*Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

demanding test.[7]  In addition, in making this determination, a court must accept as true all the facts as alleged in the complaint.[8]  In the circumstances of this case, we find that Horton's claim is arguable in both law and fact.

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners.[9] Not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation, however.[10]  The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm," and that the prison official's state of mind is one of "deliberate indifference" to the prisoner's health or safety.[11]

There is no concise definition of what types of prison conditions pose a "substantial risk of serious harm" under the Eighth Amendment.  Instead, we examine this component of the test "contextually," making sure to be responsive to "contemporary standards of decency."[12]  We must consider "whether society considers the risk ... to be so grave that it violates contemporary

---

[7]*Id.*

[8]*Id.;  see also, Gartrell v. Gaylor,* 981 F.2d 254, 259 (5th Cir.1993).

[9]*Farmer v. Brennan,* --- U.S. ----, ----, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811, 822 (1994).

[10]*Id.* at ----, 114 S.Ct. at 1977, 128 L.Ed.2d at 823.

[11]*Id.*

[12]*Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

standards of decency to expose anyone unwillingly to such a risk."[13]
We also must consider that the Eighth Amendment is intended to
protect against both present and future dangers to inmates.[14]
Prison authorities must protect not only against current threats,
but also must guard against "sufficiently imminent dangers" that
are likely to cause harm in the "next week or month or year."[15]

Applying these principles to the present case, Horton's
complaint alleges injuries that are arguably serious enough to
constitute "serious harm" under both law and fact.  Our society
does not tolerate extortion inside or outside of prison, and also
does not tolerate physical assaults.  Although Horton threw the
first punch in the initial altercation with Jackson, he arguably
did so in self defense, because of the alleged threats of extortion
and assault.  Furthermore, the second assault by Jackson at the
water cooler was apparently unprovoked.  Although Horton did not
sustain serious injuries, he could have been severely injured
either in one of those two altercations, or at a later time.  This
is arguably the type of "imminent danger" against which a prison
official must protect.  Thus, Horton's complaint meets its burden
for the first element of the Eighth Amendment claim.

The second requirement of the plaintiff's claim is that the
prison official be "deliberately indifferent" to the inmate's

---

[13]*Helling v. McKinney,* --- U.S. ----, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

[14]*Id.* at ---- - ----, 113 S.Ct. at 2480-81.

[15]*Id.*

7

health or safety.[16] This requirement is satisfied if the official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and that official actually draws that inference."[17] This issue is a question of fact, which may be proved many ways, including from circumstantial evidence.[18] Indeed, the "[f]actfinder may conclude that a prison official knew of a substantial risk form the very fact that the risk was obvious."[19]

Horton's claim is arguable in both law and fact. The plaintiff filed three grievances about Jackson, made at least one oral complaint to a prison guard, and wrote his correctional counselor about the problem. Furthermore, Jackson apparently assaulted other inmates, and allegedly attempted to start a "race riot." All of these incidents took place over a two week period. Thus, the officials at the Clements Unit were arguably aware of facts indicating that Horton and other inmates were in danger of assault from Jackson. In fact, the very frequency of Jackson's alleged violence could lead to the conclusion that Jackson posed an "obvious risk" to other inmates, even without Horton filing formal complaints.

Thus, accepting all the pleaded facts as true, Horton's complaint has an arguable basis in both law and fact for both

---

[16]*Farmer,* --- U.S. at ----, 114 S.Ct. at 1976.

[17]*Id.* at ----, 114 S.Ct. at 1979.

[18]*Id.*

[19]*Id.* at ----, 114 S.Ct. at 1981.

elements of his Eighth Amendment claim. This is enough to survive the § 1915(d) test for dismissal. The district court abused its discretion by dismissing the case on this basis.

Because we vacate the district court's order of dismissal, we need not address Horton's second claim that the magistrate judge erred in removing from the record Horton's exhibits filed with his objections to the magistrate judge's recommendation of dismissal.

### III.

Horton's final appeal argues that the district court erred in denying him leave to amend his complaint. This decision is reviewed for abuse of discretion.[20]

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is filed." In this case, the defendants have not yet even been served with the complaint, and therefore have not filed any responsive pleadings. Although Horton had amended his complaint in response to the magistrate judge's order, this was his first request to amend his complaint on his own initiative. It would appear then that the district court abused its discretion in denying the plaintiff leave to amend. On remand, the court should allow Horton to file his amended complaint.

### IV. Conclusion

For the foregoing reasons, we VACATE the order of dismissal of the plaintiff's complaint, and REMAND the case for further proceedings. In addition, we direct the district court on remand

---

[20]*Davis v. United States,* 961 F.2d 53, 57 (5th Cir.1991).

to allow the plaintiff leave to file his amended complaint.